UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SCOTT SEDORE,

        Plaintiff,                 Case No. 1:19-cv-61

v.                                         Honorable Robert J. Jonker

NOAH NAGY et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Nagy, Morrison, Unknown Party #1, and Unknown Party #2.

**Discussion**

I.       Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues Corizon Health, Inc., the MDOC, the unknown members of the MDOC Pain Committee (Unknown Parties #1), the MDOC Chief Medical Officer (Unknown Party #1), and the MDOC Assistant Chief Medical Officer (Unknown Party #2). Plaintiff also sues the following officials at LCF: Warden Noah Nagy; Deputy Warden Bryan Morrison; Nurse and Health Unit Manager (HUM) Christine Pigg; Nurse Practitioner Tammy Kelley; and Dr. Oliver Johnston.

On October 9, 2009, before he was incarcerated with the MDOC, Plaintiff was involved in a high-speed, head-on motor vehicle accident while he was intoxicated. As a result of the accident, one person died, another was seriously injured, as was Plaintiff. In the accident, Plaintiff sustained serious head injuries, traumatic stress disorder, cardiac contusion, pulmonary contusion, broken teeth, bilateral broken ribs, broken sternum, bilateral hip fractures, bilateral broken femurs, broken right arm, fractured left foot, left torn meniscus, and an open injury to his left fibula/tibia.

In his 60-page, repetitive complaint, Plaintiff sweepingly alleges that all Defendants violated his rights under the Eighth Amendment by denying him necessary medical care for his many serious medical needs, which he repeatedly lists as follows: (1) the collection of a comprehensive set of pre-incarceration medical records; (2) surgery on his right hip; (3) spinal fusion surgery; (4) cardiologist referral; (5) urologist referral; (6) pulmonary/respiratory referral;

(7) adequate pain management; (8) referral for MRIs on both knees; (9) arthroscopic evaluation of his right knee; (10) surgery to remove the rod from his left femur; (11) referral to a surgeon to address the loose screw in the hardware in his left foot; (12) referral to a neurologist to treat poly-neuropathy; (13) referral for treatment of post-traumatic stress disorder; (14) referral for treatment of traumatic brain injuries; (15) special accommodations for a raised toilet seat, an extra air mattress, and a sock donner; (16) referral for hearing testing; (17) referral to Duane Waters Hospital for orthotic shoes; and (18) referral to address Plaintiff's inability to use a CPAP machine. Plaintiff also makes numerous complaints about the adequacy of grievance handling and grievance responses, as well as his placement on modified grievance access.[1]

After 33 pages of general complaints, Plaintiff finally articulates the specific incidents about which he complains in the second half of the complaint. Those complaints involve only a small set of dates on which he sought treatment or was treated.

First, Plaintiff alleges that Defendant Pigg was deliberately indifferent to his medical needs when, on May 31, 2018, she took no action on a kite, in which Plaintiff advised her that he needed new orthotic shoes, which have a 1-inch lift in the left shoe.

Second, Plaintiff complains that, when Defendant Dr. Johnston saw him on June 27, 2018, about his serious and chronic pain issues, Johnston refused to provide anything stronger than Naproxen, despite knowing that Plaintiff would not obtain relief from the drug. Plaintiff recites separate paragraphs for each of the other 17 serious issues, which Plaintiff alleges Defendant Johnston refused or neglected to address. Plaintiff alleges that, on October 26, 2017,

---

[1] Under the then-applicable version of Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step-I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

3

Dr. Epko, an orthopedic surgeon, recommended that Plaintiff have surgery on his right hip before proceeding to recommended spinal fusion surgery. Dr. Epko also recommended that a neurologist assess and treat Plaintiff's poly-neuropathy. Corizon, however, refused the hip surgery, and the other treatments were not pursued.

Third, Plaintiff complains that, on July 23, 2018, he wrote a kite to Defendant Pigg about his chronic weight loss (40 pounds over a two-month period), complaining that the frequency of his weight checks was being cut back. Defendant Pigg did not respond to the kite.

Fourth, Plaintiff had an appointment with Defendant Nurse Practitioner Kelley on July 10, 2018, to address his chronic pain issues. Plaintiff complains that Defendant Kelley offered him no assistance with his pain, other than an injection of an anti-inflammatory.

Fifth, on July 12, 2018, Plaintiff attended an appointment with a nurse to address his kites about his chronic pain. The nurse went to speak with Defendant Kelley, who again offered an injection of an anti-inflammatory, which Plaintiff complains was useless and ineffective. Defendant Kelley, however, did not schedule an appointment to see her. The nurse also spoke with Defendant Dr. Johnston about Plaintiff's claims that he was receiving inadequate pain medications. Defendant Johnston did not see Plaintiff at that time and did not offer additional medications.

Sixth, on July 25, 2018, Plaintiff had an appointment with Defendant Kelley for an unspecified reason. Plaintiff recites in successive paragraphs Defendant Kelley's failure or refusal to discuss each of the 18 previously listed health issues about which Plaintiff complains. Defendant Kelley advised Plaintiff that he should try to remain in one prison for a sufficient length of time to ensure continuity of care. She also told Plaintiff that he should try to work with his medical providers rather than arguing with them constantly. Finally, Defendant Kelley refused to

refer Plaintiff to Duane Waters Hospital for new orthotic shoes, stating, "I'm not going to refer you to get a new pair of shoes. You don't walk so you don't need shoes." (Compl., ECF No. 1-1, PageID.40.) Plaintiff complains that his shoes are two-and-one-half years old and the Velcro straps are worn out.

Seventh, Plaintiff alleges that he wrote a kite to Defendant Pigg on July 29, 2018, complaining about his 40-pound weight loss over two months. Defendant Pigg did not reply. In addition, on July 31, 2018, Plaintiff wrote multiple-page kites to Defendant Warden Nagy, Defendant Deputy Warden Morrison, and Defendant Nurse Pigg, complaining about inhumane medical care delivered by Defendants Kelley and Johnston. None of the officials responded to his kites. Plaintiff wrote 19 Step-I grievances on August 3, 2018.

Eighth, Plaintiff complains that he had an appointment with Defendant Kelley on August 2, 2018. Plaintiff advised Kelley that, following a consultation with Dr. James Richardson at the University of Michigan on June 5, 2018, he was referred to another specialist, Dr. Hassen Berri, to perform an ultrasound-guided evaluation of Plaintiff's right hip and groin and to perform an ultrasound-guided injection to his PSOAS tendon. When Plaintiff inquired about the referral, Kelley responded, "Why would we send you to see a specialist to do this injection?[] I could send you to one of our (Corizon/M.D.O.C.) Doctor[]s at Duane Waters Health Center." (*Id.*, PageID.42.) When Plaintiff objected that Kelly was not a specialist, she informed him that it was his only option. Dr. Henderson (not a Defendant) ultimately provided an injection, but Henderson only took x-rays (which do not show tendons or other soft tissue) and the injection was not ultrasound-guided. The injection provided no relief for Plaintiff's pain and hip issues. On September 17, 2018, Plaintiff received a letter from Dr. Hassen Berri's office, inquiring why Plaintiff had missed his appointment. Plaintiff next lists a series a paragraphs addressed to

5

Defendant Kelley's failure or refusal to discuss any of Plaintiff's other 17 health problems at the August 2, 2018, appointment.

Ninth, Plaintiff alleges that he had an appointment with Defendant Kelley on August 7, 2018, at which she advised him that she had submitted a referral to the MDOC pain-management committee. Thereafter, Plaintiff alleges in separate paragraphs Defendant Kelley's failure to address each of Plaintiff's 17 additional health issues.

Tenth, on August 31, 2018, Plaintiff had an appointment with Defendant Kelley to discuss the recommendations of the MDOC pain-management committee. The committee recommended that Plaintiff's pain be treated with 400 mg of Neurontin twice each day, Tylenol, and naproxen. Plaintiff complains that he had tried the recommended medications, but they did not adequately control his pain. Plaintiff contends that Defendant Kelley, the pain committee, and the chief medical officer were all deliberately indifferent to his serious pain. Plaintiff next alleges, in separate paragraphs for each, that Defendant Kelley did not treat any of his other 17 medical needs at the appointment.

Eleventh, Plaintiff alleges that, on October 11, 2018, he wrote kites to Defendant Warden Nagy, Deputy Warden Morrison, and Health Unit Manager Pigg, complaining about the deliberate indifference of Defendants Kelley, Johnston, and Corizon to Plaintiff's serious medical needs. Plaintiff also contends that, on that same day, he wrote a kite to the grievance coordinator, seeking 19 grievance forms, but his requests were denied, as he was on modified grievance access.

Plaintiff alleges that, as the result of his untreated medical needs, he suffers chronic, agonizing pain. He also suffers major restrictions in his ability to dress himself, put on shoes, get in and out of bed, use the toilet, and clean himself. Plaintiff uses a wheelchair for almost all movement, and he cannot clean his cell or move his foot lockers.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

7

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. MDOC

Plaintiff may not maintain a §1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the Michigan Department of Corrections.

### B. Defendants Nagy, Morrison, Unknown Party #1, & Unknown Party #2

Plaintiff alleges that Defendants Warden Nagy and Deputy Warden Morrison failed to supervise the facility's medical providers and failed to conduct an investigation in response to the kites Plaintiff wrote on July 31, 2018, and October 11, 2018. Plaintiff also complains that Defendant Nagy denied his grievances and placed him on modified grievance access. In addition, Plaintiff alleges that the MDOC Chief Medical Officer (Unknown Party #1) and Deputy Chief Medical Officer (Unknown Party #2) failed to supervise their subordinates and were or should have been aware of Plaintiff's medical needs by way of his many grievances.

To the extent that Plaintiff alleges that Defendant Nagy violated his due process rights by denying his grievances and placing him on modified grievance access, he fails to state a claim. Plaintiff has no due process right to file or succeed on a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Nagy's conduct did not deprive him of due process.

In addition, Petitioner's right to petition government is not violated by Defendant Nagy's failure to act on Plaintiff's grievances or decision to place Plaintiff on grievance restriction. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff has been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, so he cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). Plaintiff therefore fails to state a claim

against Defendant Nagy arising out of the handling of grievances or access to the grievance process.

To the extent that Plaintiff complains that Defendants failed to supervise their subordinates and failed to respond to kites and grievances, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Nagy, Morrison, Unknown Party #1, or Unknown Party #2 engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. MDOC Pain-Management Committee

Plaintiff sues the MDOC pain-management committee (Unknown Parties #1), for their failure to provide him with the pain relievers that he believes are necessary. Plaintiff specifically alleges that, in early August 2018, Defendant Kelley referred Plaintiff's claims of chronic and significant pain to the committee. A couple of weeks later, the committee

recommended that Plaintiff be treated with 400 mg of Neurontin twice each day, Tylenol, and naproxen. Plaintiff claims that these pain relievers are insufficient to manage his pain.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863,

867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

13

federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, according to Plaintiff's allegations, the pain-management committee reviewed his case within a few days of referral by Defendant Kelley and made a medication recommendation. Plaintiff believes that stronger medications such as Ultram would be more appropriate. Thus, Plaintiff's claim against the committee represents nothing more than a disagreement with treatment ordered. He therefore fails to state a claim against the pain-management committee. *See Rouster*, 749 F.3d at 448; *Westlake*, 537 F.2d at 860 n.5.

### D. Remaining Defendants

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Pigg, Kelley, Johnston, and Corizon, Inc.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Nagy, Morrison,

Unknown Party #1, and Unknown Party #2 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Pigg, Kelley, Johnston, and Corizon, Inc. remain in the case.

An order consistent with this opinion will be entered.


Dated:    March 26, 2019                  /s/ Robert J. Jonker
                                          Robert J. Jonker
                                          Chief United States District Judge