UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

       Plaintiff,

v.

CASE No. 1:19-cv-61

HON. ROBERT J. JONKER

CHRISTINE PIGG, et al.,

       Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Green's Report and Recommendation in this matter (ECF No. 37); Plaintiff's Objections to the Report and Recommendation. (ECF No. 37); and Defendants' Responses (ECF Nos. 40 & 41). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the

Report and Recommendation itself; and Plaintiff's Objections. After its review, the Court finds that Magistrate Judge Green's Report and Recommendation, which recommends dismissing this action, is factually sound and legally correct.

Plaintiff raises three objections which may be distilled into the following assertions:

1. The Magistrate Judge confused an operating procedure with a policy directive in finding his grievances were not exhausted.

2. Plaintiff exhausted his administrative remedies because certain individuals participated in the grievance process who should not have.

3. The Magistrate Judge erred by stating Plaintiff raised only one count when, in fact, Plaintiff raised twenty-four counts.

(ECF No. 38).

Subsequent to the Objection, Plaintiff and Defendant Christine Pigg stipulated to the dismissal of Defendant Pigg, with prejudice, and without costs or fees. (ECF No. 42). The Court grants the stipulation and accordingly dismisses Defendant Pigg's Motion for Summary Judgment (ECF No. 27) as moot. The Court proceeds to examine Plaintiff's objections as it relates to the Magistrate's Report and Recommendation that the remaining Defendants' motion for summary judgment (ECF No. 32) be granted and this case dismissed.

Plaintiffs first two objections are similar. They both contend that Defendants failed to follow "operating procedures" (Plaintiff's first Objection) or "policy directives" (Plaintiff's second Objection) and in doing so denied him his available remedies. Thus, he says, the claims in his Complaint have all been exhausted. "Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Bonner v. Washington*, No. 17-cv-11694, 2018 WL

4854105, at *3 (E.D. Mich. June 6, 2018), *report and recommendation adopted*, 2018 WL 3629025 (E.D. Mich. July 31, 2018) (internal citations omitted). Plaintiff has not demonstrated he is entitled to relief on de novo review.

With respect to the first objection Plaintiff contends that Defendants failed to follow the applicable operating procedure, OP 03.02.130 by failing to give him an opportunity to correct his grievances before rejecting them. However, under PD 3.02.130, if Plaintiff believed the rejection was in error—which is what he contends happened here—he was required to appeal the rejection to the next step. PD 03.02.130 ¶ I. Plaintiff failed to appeal those rejections he now contends were improperly rejected as required by the policy. Accordingly, he failed to exhaust those claims and this Objection fails.

Plaintiff's second Objection is similar to the first. It contends Defendants prevented him from exercising his right to seek redress of grievances by participating in the review of grievances that they were involved in, in violation of MDOC policy. Plaintiff is correct that P.D. 3.02.130(U) provides "Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent." However none of the issues remaining in this case—claims against Defendants Corizon Health, Tammy Kelley or Oliver Johnston—involve grievances that were allegedly reviewed by those defendants. Nor does it involve conduct that involves the individuals Plaintiff contends did review his grievances: Christine Pigg, Warden Nagy, and Deputy Warden Bryan Morrison. Thus, Plaintiff's second Objection is belied by the record.

Plaintiff's third and final Objection contends that the Magistrate Judge only reviewed one of the twenty-four counts he raised in his Complaint. This objection is meritless. Plaintiff may have styled his complaint as raising a myriad number of "counts" but there was only one

overarching theory of a constitutional violation, namely, that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. The Court finds, on de novo review, that the Magistrate Judge thoroughly reviewed the entirety of the claims and factual allegations contained in Plaintiff's Complaint and agrees with the Magistrate Judge that Plaintiff is not entitled to the relief he seeks for the very reasons delineated by the Magistrate Judge.

There is one final point worth making. The Court agrees, with the Magistrate Judge, that the claims remaining in Plaintiff's Complaint must be dismissed for failure to exhaust. And as the Magistrate Judge sets out, there are good reasons for enforcing procedural exhaustion requirements. The Court is not disturbing that rationale, but the Court does observe that even when claims may have been unexhausted it is worth, from time to time, looking at the meat of a plaintiff's claim as well. Plaintiff raises numerous instances where, he says, defendants were deliberately indifferent to his serious medical needs. The Court looks at one specific contention in particular: that on October 26, 2017 a doctor recommended that Plaintiff have surgery on his hip, and that Defendants, including Defendant Kelley, failed to discuss the issue with Plaintiff or go forward with the recommendation. (*See* ECF No. 1-1, PageID.43). The medical records submitted by Plaintiff fail to establish a constitutional violation.

The record in question reflects that on October 26, 2017, Dr. Ekpo assessed Plaintiff with a history of total right hip replacement with bone fragment present, psoas impingement and trochanteric bursitis. The doctor recommended a psoas release procedure, but noted that he would not perform the procedure. Instead he referred Plaintiff to another physician. (ECF No. 17, PageID.173-174). On April 3, 2018, Plaintiff was seen at the University of Michigan Medical Center, by N.P. Michelle Allaire and Dr. Aidin Pour for an evaluation of his right hip. The

providers noted that Plaintiff was referred to the University of Michigan following his treatment with Dr. Ekpo. After an examination, they noted that "we do not recommend a procedure directed at the psoas tendon," but that even if they did, it was not a procedure they performed in the office. They also did not recommend a revision total hip arthroplasty. Instead, they recommended "an aggressive stretching program at the hip or Physical Therapy." (ECF No. 17, PageID.177). Subsequent physicians agreed. In a note following a June 5, 2018 evaluation, Dr. James Richardson noted that Plaintiff was "quite focused on the idea of the [right] hip joint itself . . . and that it should be explored arthroscopically or replaced. *I emphasized to him that I do not believe this is the case.*" (ECF No. 17, PageID.180) (emphasis added). Instead the doctor recommended putting ice on the area for 5 to 10 minutes before bed and at other times a needed. He also recommended an injection in the area. (*Id.* at PageID.181).

Plaintiff admits that he received an injection, but he complains that the procedure was not done by a specialist and that the injection did not work. (ECF No. 1-1, PageID.42). These records provided by Plaintiff do not demonstrate that Defendants failed to act deliberately indifferent to Plaintiff's serious medical needs nor did they fail to perform a surgery that was recommended. Plaintiff admits he received treatment for his right hip, just not in the manner and from the provider he might prefer.

As the Court noted in an earlier order, not every claim by a prisoner that he received inadequate medical treatment states a violation of the Eighth Amendment. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). The Sixth Circuit distinguishes "between cases where the complaint

5

alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* Plaintiffs in such a situation must demonstrate that the care they received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Plaintiff's claim against the defendants with respect to his claim that he required surgery on his right hip is belied by the record and, furthermore, represents little more than a disagreement with the treatment ordered. It falls far below demonstrating that the complained of conduct was grossly incompetent, inadequately, or excessive so as to shock the conscience or be intolerable to principles of fundamental fairness.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 37) is approved and adopted as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the Proposed Stipulation and Order of Dismissal (ECF No. 42) is **GRANTED.** Defendant Pigg is **DISMISSED WITH PREJUDICE** as a Defendant in this case. Defendant Pigg's Motion for Summary Judgment (ECF No. 27) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the remaining Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED.**

The Court discerns no good-faith basis for appeal of this matter. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

This case is **DISMISSED.**

Dated: __March 3, 2020__         /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE